IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RONNIE JAMES BETTIS, ) | |
| AIS # 295462 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 2:14cv881-MHT |
| ) | (WO) |
| ) | |
| SHERIFF DENNIS MEEKS, *et al*., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Ronnie James Bettis ("Bettis"), an indigent inmate presently incarcerated in the state prison system, challenging the adequacy of medical treatment provided to him during his confinement at the Covington County Jail in 2013. (Doc. # 1).  Bettis names as defendants Covington County Sheriff Dennis Meeks and Dianne Williams, a nurse employed at the Covington County Jail. Bettis seeks declaratory relief and monetary damages for the alleged violations of his constitutional rights.  (*Id*. at 4).

The defendants filed a special report and relevant supporting evidentiary materials, including affidavits and medical records, addressing Bettis' claims for relief.  *See* Doc. # 23. The plaintiff has filed a response in opposition to the defendants' special report.  (Doc. # 31). Pursuant to the orders entered in this case, the court deems it appropriate to construe these

reports as a motion for summary judgment. (Doc. # 24). Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response to the motion, the court concludes the defendants' motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted) (footnote added); FED.R.CIV.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movants may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to

---

[1] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322-324.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Once the movants meet their evidentiary burden and demonstrate the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in his favor. *Greenberg*, 498 F.3d at 1263.

Consequently, to survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs*., 276 F.3d 1275, 1276 (11th Cir., 2001); *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging the actions of the defendants). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363

F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

5

## III.  DISCUSSION

**A.  Suit Against Defendant Meeks in His Official Capacity - Absolute Immunity**

To the extent Bettis sues Sheriff Meeks in his official capacity, he is immune from monetary damages.[2]  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) *abrogated on other grounds*, *Lake v. Skelton*, 2016 WL 6518522 (11th Cir. 2016).

"It is well established in this Circuit that Alabama sheriffs and their deputies are state officials and are absolutely immune from suit as an officer of the state under the Eleventh Amendment."  *Melton v. Abston*, — F.3d —, 2016 WL 6819670 (11th Cir. Nov. 18, 2016) (No.15-11412).  In light of the foregoing, it is clear Sheriff Meeks is a state actor entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages

---

[2]  Under all facets of Alabama law, a county sheriff, his jailers and medical staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

6

from him in his official capacities. *Id. See also Lancaster*, 116 F.3d at 1429.

## B. Failure to Exhaust Administrative Remedy

Bettis challenges the constitutionality of medical treatment provided to him during his incarceration at the Covington County Jail in September of 2013. Bettis asserts that initially, he was provided appropriate medications by Nurse Williams. It was not until September 2013 that Williams gave him an uncoated aspirin instead of a specially coated aspirin. Bettis contends that he had an allergic reaction to the uncoated aspirin which then triggered a stroke. In the response, the defendants maintain this case is subject to dismissal because Bettis failed to properly exhaust the administrative remedy provided at the Covington County Jail prior to filing this complaint as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Woodford v. Ngo*, 548 U.S. 81 (2006); *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998).

The record in this case establishes that the Covington County Jail provides a grievance procedure for inmate complaints. (Doc. # 23, Ex. 3A). The grievance procedure reads as follows:

> POLICY:
>
> It is the policy of the Covington County Jail that inmates are permitted to submit grievances to the Jail Administrator and that each grievance will receive a response.
>
> PROCEDURE:
>
> The Jail Administrator will devise a grievance form to be made available to all inmates on request.
>
> Inmates must file a completed grievance form within 7 days from the date of the occurrence upon which the grievance is based.
>
> Completed grievance forms shall be delivered to the Jail Administrator who will respond to the grievance.
> The grievance response to the inmate will be in writing.
>
> Once the grievance has been answered by the Jail Administrator a copy of the answered grievance will be made and returned to the inmate with the original grievance being placed in the inmate's file.
>
> The decision of the Jail Administrator may be appealed to the Sheriff in writing within seventy-two (72) hours of the receipt of the grievance decision.
>
> Whole block grievances will not be accepted or answered. All grievances <u>must</u> come from individual inmates.

*Id*.

On December 3, 2014, the court entered an order allowing Bettis the opportunity to respond to the arguments made by the defendants in their special report, specifically directing Bettis to respond to the defendants' assertion that he failed to exhaust his available administrative remedies. (Doc. # 24) In response to this order, Bettis asserted that "3 different people on behalf of Mr. Bettis tryed (sic) to resolve the matter and cause at hand. The incapacitated Mr. Bettis's condition spoke for itself." (Doc. # 31 at 4). Bettis does not dispute that he did not file a grievance related to his medical treatment. Consequently, the court concludes the claims presented in this cause of action are subject to dismissal as Bettis failed to properly exhaust an administrative remedy available to him which is a precondition to proceeding in this court on his claims. *Ngo*, 548 U.S. at 87-94

It is undisputed that Bettis failed to file a grievance with respect to the claims presented in this case within the time required by the grievance procedure in effect at the Covington County Jail. Thus, the administrative remedy provided by the defendants regarding the instant claim is no longer available to Bettis. Under such circumstances, dismissal with prejudice is appropriate. *Bryant v. Rich*, 530 F.3d 13687, 1375 n.1 (11th Cir. 2008); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005); *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining

9

access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits . . . properly dismissed with prejudice" where previously available administrative remedies had become unavailable and no circumstances justified the failure to exhaust). The defendants are therefore entitled to summary judgment due to Bettis' failure to properly exhaust administrative remedies previously available to him at the Covington County Jail.

### C. Merits of Deliberate Indifferent Claim[3]

Even had Bettis exhausted the available administrative remedy, he remains entitled to no relief as the record establishes the defendants did not act with deliberate indifference to his medical condition. Although Bettis challenges the treatment decisions rendered by medical personnel, maintains Nurse Williams substituted ordered medication by giving him uncoated aspirin, and jail personnel failed to timely seek medical treatment for him, these assertions fail to establish deliberate indifference as the medical records indicate the defendants provided appropriate treatment to Bettis based on his medical history and their evaluations of his condition. The medical records establish that, upon his entry into the jail, medical personnel immediately examined Bettis, and continued his previously prescribed medications. The medical records further demonstrate medical personnel routinely examined

---

[3] It appears the alleged denial of medical treatment which forms the basis of the instant complaint occurred during Bettis's confinement as a pre-trial detainee. "Pretrial detainees . . . 'plainly have a Fourteenth Amendment due process right to receive medical treatment for illness and injuries.'" *McBride v. Houston Cty Health Care Authority*, 2016 WL 5539822, * 4 (11th Cir., Sept. 30, 2016) (No. 15-12871). Regardless of Bettis' status in the jail, jail officials who are aware of "serious medical needs may not ignore them or provide grossly inadequate care." *Id*.

Bettis regarding any complaints, adjusted his medication, and at times, moved him to an observation cell near the medical office.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (Under *Estelle*, plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment." *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).

In order to establish "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the

need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual

punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").

Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker,* 898 F.2d 1530 (11th Cir. 1990).

In addition, when an inmate's deliberate indifference claim relates to a delay in treatment, this court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007). In a case alleging that delay in medical treatment shows deliberate indifference, the plaintiff "must place verifying medical evidence

13

in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-1188 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002); *Mann*, 588 F.3d at 1307 (no deliberate indifference to serious medical need where delay did not worsen condition).

When he was booked into the Covington County Jail in July 2013, Bettis stated he suffered from high blood pressure. Dr. McWhorter prescribed medications for Bettis including Metoprolol25 mg, entreric-coated aspirin 325 mg and Hydrochlorothiazide (HCTZ)12.5/Lisinoprol10 mg to treat his heart and blood pressure. (Doc. # 22, Ex. 1 at 3, ¶ 15). Based on their knowledge of his medical history and upon observation and evaluation of Bettis, medical personnel initiated a practicable treatment plan which included management of his blood pressure through the use of prescription medication and routine evaluations of the inmate. Thus, Bettis received medical treatment for his medical condition upon his initial intake and throughout his confinement in the Covington County Jail in the form of physical examinations, medical evaluations, and prescription medication.

On September 10, 2013, correctional officers brought Bettis to the medical office because he had vomited in his cell. (*Id*. at 8, ¶ 35). While in the medical office, Bettis complained of left side numbness and left arm pain. (*Id*. at ¶ 36). Bettis stated that he wondered "if [he] had a stroke." (*Id*.) At that time, Nurse Williams did not observe any drawing of Bettis' mouth, no difficulty with his speech and he was able to ambulate without

difficulty. (*Id*.) Nurse Williams referred Bettis to Dr. McWhorter.

On September 11, 2013, Dr. McWhorter examined Bettis who complained of left side numbness. (*Id*. at ¶ 38). Dr. McWhorter noted that Bettis' blood pressure was normal and he did not observe any signs of a stroke. (*Id*.)

On September 12, 2013, Bettis complained of a severe headache. Bettis was moved to a holding cell near the medical office for monitoring. (*Id*. at ¶ 40). Bettis was observed every thirty (30) minutes. After Nurse Reeves checked Bettis' vital signs and noted that his blood pressure was 122/82, Bettis was permitted to return to his cell. (*Id* at ¶ 41).

On September 18, 2013, Covington County Circuit Judge Ashley McKathan ordered Bettis released into the custody of his wife so that he could be transported to "the Veterans Administration hospital for examination and treatment." (Doc. # 31, Ex. 3). Bettis' wife took him to the Florala Memorial Hospital where he was admitted for treatment of an ischemic stroke and hypertension. (Doc.# 31, Ex. 4).

Under the circumstances of this case, the court concludes the course of treatment undertaken by the defendants in addressing Bettis' medical condition did not violate his constitutional rights. The medical care Bettis received was adequate and certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. It is undisputed that Bettis received medical care and it is evident the defendants rendered treatment to Bettis in accordance with their professional judgment. In addition, Bettis has failed to present any evidence which

indicates the defendants knew the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The allegations presented by Bettis simply fail to establish deliberate indifference.

In addition, an inmate's allegation that prison physicians did not diligently pursue alternative means of treating a medical condition "did not 'rise beyond negligence'. . . to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution).

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

The record is therefore devoid of evidence, significantly probative or otherwise,

showing the defendants acted with deliberate indifference to Bettis' medical condition.[4] Consequently, summary judgment is due to be granted in favor of the defendants.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **December 5, 2016**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions

---

[4] Although Bettis provided affidavits from his wife and niece, both of whom are nurses, their affidavits do not create disputed issues of fact precluding summary judgment.  It is undisputed that Bettis received medical treatment while at the Covington County Jail.  Even assuming Bettis suffered a stroke while in custody, that fact alone is insufficient to demonstrate that Nurse Williams or Sheriff Meeks were deliberately indifferent to Bettis' medical condition.

accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11ᵀᴴ Cɪʀ. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 21st day of November, 2016.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE